OPINION
By MERRICK, J.
This is an action by plaintiff, a stockholder in defendant, corpora- \ tion, The National Bronze and ' Aluminum Foundry Company, .seeking a mandatory injunction to [permit him and his agents to ex-r amine all the books and records of such corporation. Plaintiff has named as individual defendants, John L. Schmeller and James P. Quigley, officers of the corporation at the time of the bringing of the action.
Plaintiff contends that he demanded an examination of such books on July 2, 1942, and September 21, 1942, but has not been afforded such opportunity as would permit him and his agents to make such examination. Plaintiff also seeks an order of Court fixing a penalty fox failure to comply with plaintiff’s requests.
The defendant, James P. Quigley, was president of the corporation at the time the requests were made, and by answer filed in this action states that he honored the requests and ordered the employees to permit plaintiff to examine the books and records and did everything within his power to afford plaintiff an opportunity to examine such books, and now joins in plaintiff’s prayer for such right of examination.
Plaintiff complains against the defendant, John L. Schmeller, that he, Schmeller, was executive vice president of the corporation and was in full charge and control of all its books and records, and that he has refused to plaintiff the right of examination, regardless of Quigley’s order to permit such inspection.
The only right of a stockholder to examine the corporate books and records of a corporation is contained in §8623-63 GC. So much of that section as is pertinent to this question reads as follows:
“The books of account, list of shareholders, and their addresses, records of the issuance and transfer of shares, voting trust agreements, if they are filed, and the minutes of meetings of every corporation shall be open to the inspection of every shareholder at all reasonable times save and except for unreasonable or improper purposes.”
Under this section, it is incumbent upon the trial court to determine the reasonableness and timeliness as well as the propriety, of the request to examine.
The testimony shows that plaintiff owns about 300 shares and thar there are approximately 100,000 shares outstanding in this corporation. These are held by approximately 650 persons. The testimony also reveals that plaintiff has been a stockholder for about three (3) years and purchased the stock for investment or speculation. Plaintiff is in the business of dealing in investment securities and advising others thereon.
The defendant Quigley appeared in court as a defendant, but, all through the trial co-operated with plaintiff and sat on plaintiff’s side of the trial table, continually conferring with him and his counsel. How long defendant Quigley has been a stockholder was not revealed, as Quigley did not take the witness stand at any time during the trial. The defendant, John L. Schmeller, has been connected *456 with the corporation for eighteen years in various capacities as a workman, salesman and officer of the corporation and was elected president shortly before the trial of this action was commenced.
On the face of the evidence, it is apparent that this action is the outgrowth of some internal disagreement between the plaintiff, Rieder, and the defendant Quigley on one side and the defendant ■John L. Schmeller and other officers of the corporation on the opposite side. These quarrels are not infrequent and are constantly coming before our courts. It amounts to a squabble between a minority investment or speculating stockholder or stockholders, and the persons who are actually operating the corporation and are physicaly engaged in carrying out the corporate business.
The reasons given from the witness stand by the plaintiff Rieder ■as a basis for his request to examine the books are not altogether clear, but the best interpretation this Court can give to the evidence is that the plaintiff and the defendant Quigley have some plan or understanding whereby they desire the information contained in the corporate books and records, so that they can determine what speculation or activity to inaugurate with reference to the stock owned by them or owned by their clients or others seeking their advice as to financial investment.
Good faith is always an issue in this type of action, but this Court does not care to go into the question of the good faith of the plaintiff Rieder and the defendant Quigley further than to say that a further execution of their plans as set forth in the pleadings and the evidence in this case could cause a serious impairment of the production and profits of this corporation and a very grave interference with the war effort.
The evidence is uncontradicted that it would take many months to intelligently conduct a separate audit of the books and records of this corporation. The defendant, the National Bronze and Aluminum Foundry Company, is engaged 100% in war production effort. This Court is asked to permit an inspection and possible audit that would seriously tie up its bookkeeping system for months. In the face of that situation such retardment would slow up the dispatch with which the. production effort must be prosecuted.
Even in peace times such inspection would not be warranted. A delay in the carrying on of the business is to the detriment of the other stockholders if the corporation is operating at a profit. This was made the law of this district in the case of Cornell v Nestle LeMur Co., 65 O. A., 1. In that case, the court in its opinion says:
“If such mandatory injunction were issued as a matter of course, without first balancing the equities of the parties, it may well be conceived that a small group of small stockholders, not having the best interests of the company at heart, and having the interests of some competition uppermost in mind, could thoroughly harass such a company by a method of each small stockholder successively demanding the transportation of the books and records of the company from New York to Ohio, and thereby keeping the books and records in a constant state of transportation, causing the business of the company to be utterly dissipated to the great damage of all the other stockholders.”
In this case, however, there is a much more important and ser *457 ious objection to the permission of the requested examination. We are at war. The defendant, The National Bronze and Aluminum Company is engaged 100% in war production. Under the broad powers effective in time of war, there has been created in the War Department a Committee for Protection of Information. The Espionage Act as amended by the Congress of the United States prohibits the distribution or dissemination of information concerning the production ■of materials to be used in our war effort. A heavy fine and imprisonment is provided for obtaining or giving any information concerning:
“____work of defense----or any place in which_____materials or instruments for use in time of war are being made----”
Much has been said during the trial of this case that the Committee for Protection of Information has given permission for the giving out of the information which would be revealed by the plaintiff’s proposed examination of the books of the defendant corporation. Each and every order and communication from any branch of the United States Government and the deposition of the officer in charge of the Committee for Protection of Information •clearly shows that the Espionage Act and the rules promulgated thereunder clearly prohibit any examination which might disclose war information jeopardizing the security of the United States.
The evidence is uncontradicted that an examination of the books and records of the defendant company would disclose such information and might place it in the hands of persons who could promiscuously make use of it. Such use might lead to a careless disclosure of government secrets that might lead to disastrous results if obtained by agents of our enemies.
In the opinion of this Court, the plaintiff Rieder is not acting altogether in good faith in seeking this examination of these books and records. This Court thinks that the defendant, Quigley, at the time he was an officer of the corporation should have had better business judgment and a better knowledge of the wartime statutes and regulations than he exhibited when he attempted to permit a full disclosure of all the information concerning the corporation’s activities which would have been revealed upon an inspection of the corporate books and records. This Court is of the opinion that the defendant, Schmeller not only demonstrated sound business judgment for the protection of all the stockholders in refusing the inspection of the books and records, but that in so doing he was upholding both the letter and the spirit of the Espionage Act and the rules prescribed by the Committee for Protection of Information.
For the reasons stated herein the petition of the plaintiff is dismissed at his costs.